**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Kostic, | No. CV-19-05164-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| AutoZone Parts Incorporated, et al., | |
| Defendants. | |

Before the Court is AutoZone Parts Incorporated's ("AutoZone") and Great Neck Saw Manufacturers, Inc.'s ("Great Neck") motion for summary judgment, which is fully briefed. (Docs. 45-47.) The Court held oral argument on February 5, 2020 and took the matter under advisement. (Doc. 51.) For the following reasons, the Court will grant Defendants' motion for summary judgment.

**I. Background**

This suit arises from injuries suffered by Plaintiff on August 5, 2017 during his use of an OEM coil spring compressor (the "Compressor") to remove a compressed coil spring from a Dodge Dakota. (Doc. 1-3.) Plaintiff is a former army combat mechanic and self-identified expert auto mechanic who, at the time, was self-employed as a mechanic from his home garage. (Doc. 45-2 at 7, 10, 19.) A frequent customer at AutoZone, Plaintiff secured the Compressor, distributed by Great Neck, through AutoZone's Loan-A-Tool

program (the "Program").[1] (*Id.* at 4; Doc. 45-4 at 8.) Noting that the plastic box containing the Compressor lacked instructions or warnings, Plaintiff looked up instructions by watching a Youtube video.[2] (Doc. 45-2 at 20-21.) Plaintiff thereafter used the Compressor while attempting remove a coil spring from his friend's Dodge Dakota. During the attempted removal, the coil spring quickly expanded and crushed Plaintiff's hand (the "Incident"). Plaintiff testified that he believed the Incident occurred when one of the Compressor's forked hooks dislodged from the coil spring because the Compressor's hooks were too small for the Dodge Dakota spring. (*Id.* at 30-31.) However, at oral argument, counsel conceded that, because the Incident occurred so quickly, Plaintiff is unsure what happened. After the Incident, Plaintiff returned the Compressor to AutoZone and informed the store manager, Byron Smith, of his injuries. Mr. Smith later transferred to a new AutoZone location and the Compressor disappeared. (Doc. 45-4 at 10.)

On July 31, 2019, Plaintiff filed suit against Defendants in Maricopa County Superior Court. (Doc. 1-3.) Defendants removed the action to this Court on September 13, 2019. (Doc. 1.) Plaintiff's operative complaint asserts manufacturing defect, design defect, and warning defect claims and negligence claims against both defendants. (Doc. 1-3.) However, Plaintiff has since clarified that he now pursues only a warning defect claim against both defendants and a negligence claim against AutoZone.[3] On November 19, 2020 Defendants filed a motion for summary judgment, which is now ripe.

**II. Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the

---

[1] In the Program, a customer gives AutoZone a deposit in exchange for a tool. The customer may then return the tool in exchange for a return of their deposit or keep the tool while forfeiting the deposit. (Doc. 45-2 at 20.) Per AutoZone policy, prior to renting a tool via the Program, the customer inspects the tool alongside an AutoZone employee; upon return of a tool, an AutoZone employee inspects it for damage, and only returns the tool into circulation in the absence of damage. (Doc. 45-3 at 6-8; Doc. 45-4 at 11-12.)

[2] When asked at oral argument to identify the particular instructional video Plaintiff watched on Youtube, counsel responded that Plaintiff had been unable to locate the video. The Court is therefore unable to surmise what information or warnings Plaintiff received prior to operating the Compressor.

[3] In other words, Plaintiff has abandoned his manufacturing defect and design defect claims against both defendants and his negligence claim against Great Neck.

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

**III. Discussion**

    **A. Warning Defect**

To survive summary judgment on a strict product liability claim, a plaintiff must show (1) the product was in a defective condition when it left the defendant's hands; (2) the defect made the product unreasonably dangerous; and (3) the defect was the proximate cause of the plaintiff's injuries. *Southwest Pet Prod., Inc. v. Koch Indus., Inc.*, 273 F. Supp. 2d 1041, 1051 (D. Ariz. 2003) (citation omitted). Turning to prong one, Plaintiff alleges the Compressor was in a "defective condition" because when he received it from AutoZone, it lacked the warnings and instructions ordinarily included with the tool when distributed. (Doc. 46-2 at 10-13.) Plaintiff has failed to provide any evidence that the Compressor lacked such warnings and instructions when it left Great Neck's hands. Thus,

entry of summary judgment in Great Neck's favor is appropriate on this claim.

Even if Plaintiff had included evidence that the Compressor lacked warnings and instructions when it left Great Neck's hands, summary judgment in favor of both defendants is nevertheless appropriate because the record lacks evidence that the warning defect proximately caused Plaintiff's injuries under prong three. First, at his deposition, Plaintiff testified that, had he received the proper safety instructions and warnings, he would have learned that the Compressor was the wrong tool for the job, and he would have secured the proper tool. (Doc. 45-2 at 21.) Plaintiff's speculation is contradicted by Plaintiff's own expert, Dr. Geoffrey Desmoulin, who opined that the device was the correct tool for the job. (Doc. 45-7 at 11.) In fact, Dr. Desmoulin used an exemplar of the Compressor to perform the same job in three separate trials, and despite gross abuse, could not get the exemplar to fail.[4] Second, Plaintiff is a self-identified expert auto-mechanic who previously used coil spring compressors as many as 50 times during his military service. (Doc. 45-2 at 9.) And, despite the lack of instructions and warnings included in the Compressor's box, he independently educated himself on how to use the Compressor by watching a Youtube instructional video prior to the Incident. Plaintiff has not produced the Youtube video that he reviewed, explained how that video failed to provide the necessary information, or detailed how he would have avoided injury had he received the proper warnings and instructions. Rather, at oral argument, counsel conceded that the incident happened so quickly that Plaintiff is not sure what happened to cause his injury, and that Plaintiff has not explained what precautions he would have taken to avoid injury had he received the normally included warnings and instructions. In sum, because Plaintiff has failed to create a dispute of material fact as to whether the warning defect caused his injuries, the Court will grant summary judgment to Defendants on this claim.

---

[4] In the first test, Dr. Desmoulin used the exemplar coil spring compressor on a Dodge Dakota spring with the fork plate misaligned, dropped the exemplar compressor and struck it with a metal rod. The exemplar compressor did not fail. In the second test, Dr. Desmoilin used the exemplar compressor on the Dodge Dakota spring with the hooks misaligned, dropped the exemplar compressor and struck it. Again, the exemplar compressor did not fail. In the third test, Dr. Desmoulin correctly aligned the exemplar compressor's forked plate and hooks, dropped the exemplar compressor and struck it. Once again, the exemplar compressor did not fail. (Doc. 45-5.)

### B. Negligence

To survive a motion for summary judgment on a negligence claim, a plaintiff is required to produce evidence showing (1) the existence of a duty recognized by law requiring the defendant to conform to a certain standard of care; (2) the defendant's breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual damages. *Ontiveros v. Borak*, 667 P.2d 200, 204 (Ariz. 1983). Here, Plaintiff asserts three negligence claims against AutoZone. The first is based on AutoZone's failure to provide the proper warnings and instructions to Plaintiff when he rented the Compressor; the second is based on AutoZone's provision of the improper tool to Plaintiff for the job he sought to perform; the third stems from AutoZone's provision of a worn tool to Plaintiff. AutoZone is entitled to summary judgment on each of Plaintiff's negligence claims for the following reasons.

Plaintiff's negligence claim based on a failure to warn or instruct fails for the same reason that his warning defect claim against AutoZone fails. Namely, the record lacks evidence that AutoZone's failure to provide Plaintiff with the instructions and warnings ordinarily distributed with the Compressor caused Plaintiff's injuries. Turning to Plaintiff's second claim, as explained above, the record lacks evidence that AutoZone provided the incorrect tool for the Dodge Dakota job. Plaintiff speculates, without evidence, that the Compressor was the wrong tool for the job solely because he was injured while using it. However, Plaintiff's own expert contradicts his speculation. Notably, Dr. Desmoulin's trials demonstrate that, even with gross misuse and abuse, the exemplar compressor did not fail to correctly compress the Dodge Dakota spring. Speculation, without more, is insufficient to create a genuine dispute of material fact on this issue. Finally, Plaintiff's third negligence claim, stemming from AutoZone loaning a tool to him that allegedly suffered from dangerous wear and tear, fails as a matter of law because insufficient evidence exists that the Compressor suffered from wear and tear or that such wear and tear caused Plaintiff's injuries. The only evidence in the summary judgment record suggesting that the Compressor suffered from wear and tear, causing Plaintiff's

injuries, derives from Dr. Desmoulin's opinion in which he notes that, based on an inspection of a single photograph of the Compressor, the Compressor *possibly* suffered from wear and tear, which *possibly* caused Plaintiff's injuries.[5]  (Doc. 45-5 at 16.) Evidence indicating a mere possibility of causation is not enough to meet Plaintiff's burden of proof at summary judgment.  *See Purcell v. Zimbelman*, 500 P.2d 335, 342 (Ariz. Ct. App. 1972) (A plaintiff has the burden of proof to "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not the conduct of the defendant was a substantial factor in bringing about the result . . . . a mere possibility of such causation is not enough.").  Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 45) is **GRANTED.**  The Clerk of Court is directed to enter judgment in favor of Defendants and terminate the case.

Dated this 9th day of February, 2021.

Douglas L. Rayes
United States District Judge

---

[5] During his deposition, Dr. Desmoulin explained, "[i]t's possible that there was wear on that threaded rod. Without seeing it or without inspecting it, and especially without testing it, we can't make that determination if that was the mechanism or not" and "you can see on the threaded rod there is some shiny aspects to it that you don't see in a new device, but it's really hard to make a conclusion from that." (Doc. 45-7 at 15-16.)